# EXHIBIT 1

# Case History

## Ada

### 1 Cases Found.

### Western Benefit Solutions LLC vs. John Gustin, etal.

Case: CV-OC-2010-08362 **District** Filed: **04/27/2010** Subtype: **Other Claims** Judge: **Tim Hansen**   Status: **Pending**

Defendants: **Gustin, John  Moreton Insurance Of Idaho Inc**
Plaintiffs: **Western Benefit Solutions LLC**

Register Date
of
actions:

| | |
|---|---|
| 04/27/2010 | New Case Filed - Other Claims |
| 04/27/2010 | Complaint Filed |
| 04/27/2010 | (2) Summons Filed |
| 04/29/2010 | Affidavit Of Service 04/28/10 |
| 04/29/2010 | Notice Of Hearing on Application of Preliminary Injunction |
| 04/29/2010 | Hearing Scheduled (Hearing Scheduled 05/17/2010 02:30 PM) Application of Preliminary Injuction |
| 05/03/2010 | Affidavit Of Service 04/29/10 |
| 05/04/2010 | Notice Of Appearance (Scott for Moreton) |
| 05/10/2010 | Defendant Moreton Insurance of Idaho, Inc's Memorandum in Opposition to Plaintiff's Application for Preliminary Injunction |
| 05/10/2010 | Affidavit of Tamie Cooper |
| 05/10/2010 | Affidavit of Cody Gustin |
| 05/10/2010 | Notice Of Appearance (Robert B. White for John Gustin) |
| 05/11/2010 | Notice of Joinder in Opposition to Application for Preliminary Injunction |
| 05/11/2010 | Affidavit of John Gustin |
| 05/13/2010 | Identification of Witnesses who may Provide Testimony |
| 05/13/2010 | Amended Affidavit of John Gustin |
| 05/13/2010 | Affidavit of Ronald Osborne |
| 05/13/2010 | Reply Memorandum in Support of Application for Preliminary Injunction |
| 05/14/2010 | Motion to Strike and Motion to Shorten Time |
| 05/14/2010 | Memorandum in Support of Motion |
| 05/18/2010 | Hearing result for Hearing Scheduled held on 05/17/2010 02:30 PM: Hearing Vacated Application of Preliminary Injuction |
| 05/18/2010 | Hearing Scheduled (Motion 05/27/2010 09:00 AM) for Preliminary Injunction |
| 05/18/2010 | Notice Of Hearing |
| 05/18/2010 | Hearing Scheduled (Motion 05/27/2010 09:00 AM) Motion to Shorten Time |
| 05/19/2010 | Moreton Insurance Answer to Complaint (B Miller for Moreton) |
| 05/19/2010 | Answer to Complaint (Robert White, atty for Defendant John Gustin) |
| 05/19/2010 | Three Day Notice Of Intent To Take Default |
| 05/19/2010 | Amended Notice of Hearing (05/27/10 @ 9:00am) |
| 05/19/2010 | Hearing Scheduled (Hearing Scheduled 05/27/2010 09:00 AM) Application for Preliminary Injunction |

| | |
|---|---|
| 05/24/2010 | Affidavit Of Service |
| 05/26/2010 | Notice Reserving Right to Call Witnesses and Produce Evidence |
| 05/27/2010 | Hearing result for Motion held on 05/27/2010 09:00 AM: Hearing Vacated Motion to Shorten Time |
| 05/27/2010 | Hearing result for Motion held on 05/27/2010 09:00 AM: District Court Hearing Held Court Reporter: D. Cromwell Number of Transcript Pages for this hearing estimated: for Preliminary Injunction 100-5-- |
| 05/27/2010 | Notice of Reservation of Rights to Call Witness |
| 06/01/2010 | Affidavit Of Service (5/24/10) |
| 06/01/2010 | Affidavit Of Service (5/25/10) |
| 06/03/2010 | Hearing Scheduled (Status 06/29/2010 04:30 PM) |
| 06/08/2010 | Supplemental Memorandum in Support of Plaintiffs Application for Preliminary Injunction |
| 06/08/2010 | Affidavit of Jason G Dykstra |
| 06/10/2010 | Defendant Moreton Insurance of Idaho, Inc's Response to Plaintiff's Supplemental Memorandum in Support of its Application for Preliminary Injunction |
| 06/10/2010 | Affidavit of Jason D Scott |
| 06/11/2010 | Defendant John Gustin's Notice of Joinder in Moreton Insurance of Idaho, Inc's Response to Plaintiff's Supplemental Memorandum in Support of its Application for Preliminary Injunction |
| 06/29/2010 | Hearing result for Status held on 06/29/2010 04:30 PM: Hearing Held - In Chambers |
| 07/27/2010 | Affidavit Of Service 07/26/10 |
| 07/28/2010 | Affidavit Of Service (07-27-10) |
| 08/09/2010 | Motion To Amend Verified Complaint To Add A Claim For Punitive Damages |
| 08/09/2010 | Memorandum In Support of Motion |
| 08/09/2010 | Affidavit Of Jason G Dykstra In Support Of Motion |
| 08/09/2010 | Notice Of Hearing |
| 08/09/2010 | Hearing Scheduled (Motion to Amend 08/23/2010 03:00 PM) Motion To Amend Verified Complaint to Add A Claim For Punitive Damages |
| 08/16/2010 | Defendant Moreton Insurance of Idaho Incs Memorandum in Opposition to Plaintiffs Motion to Amend Verified Complaint to Add a Claim for Punitive Damages |
| 08/16/2010 | Affidavit of Drew Ranstrom |
| 08/16/2010 | Defendant John Gustins Opposition to Plaintiffs Motion to Amend Verified Complaint to Add a Claim for Punitive Damages |
| 08/20/2010 | Reply Brief in Support of Motion to Amend Complaint |
| 08/23/2010 | Memorandum Decision and Order Regarding Plaintiff's Motion for Preliminary Injunction |
| 08/23/2010 | Hearing result for Motion to Amend held on 08/23/2010 03:00 PM: District Court Hearing Held Court Reporter: V. Gosney Number of Transcript Pages for this hearing estimated: Motion To Amend Verified Complaint to Add A Claim For Punitive Damages - less than 100 |
| 09/13/2010 | Notice Of Service of Discovery |
| 09/13/2010 | Notice Of Service of Discovery |
| 10/05/2010 | Notice Of Hearing [RE: Order for Preliminary Injunction] (10/28/2010 at 2:30 p.m.) |
| 10/05/2010 | Hearing Scheduled (Hearing Scheduled 10/28/2010 02:30 PM) Order for Preliminary Injunction |

| | |
|---|---|
| 10/18/2010 | Notice Of Service |
| 10/21/2010 | Objection to Plaintiff's Proposed Order for Preliminary Injunction |
| 10/21/2010 | Defendant John Gustins Objection to Plaintiffs Proposed Order for Preliminary Injunction |
| 10/22/2010 | Notice Of Service of Discovery |
| 10/25/2010 | Notice of Compliance |
| 10/28/2010 | Hearing result for Hearing Scheduled held on 10/28/2010 02:30 PM: Hearing Held Order for Preliminary Injunction - In Chambers |
| 11/12/2010 | Notice Of Service |
| 11/17/2010 | Notice Of Service |
| 11/24/2010 | Order For Preliniary Injunction |
| 11/30/2010 | Notice of Depositing of Bond |
| 12/02/2010 | Notice Of Vacating Deposition Duces Tecum Of Ada County's Custodian Of Records |
| 12/14/2010 | (2) Notice Of Service |
| 12/15/2010 | Notice Of Taking Deposition |
| 01/03/2011 | Notice Of Taking Deposition Duces Tecum |
| 01/05/2011 | Notice Of Taking Deposition Duces Tecum of Custodian of Record For Ada County |
| 01/14/2011 | Motion to Quash or in the Alternative, to Modify and Condition Compliance With the Deposition Subpoena Duces Tecum to Ada County Custodian of Records |
| 01/14/2011 | Affidavit of Doug Heikkila in Support of Motion to Quash or in the Alternative, to Modify and Condition Compliance With the Deposition Subpoena Duces Tecum to Ada County Custodian of Records |
| 01/14/2011 | Affidavit of Robert Perkins in Support of Memornadum in Support of Motion to Quash or in the Alternative, to Modify and Condition Compliance With the Deposition Subpoena Duces Tecum to Ada County Custodian of Records |
| 01/14/2011 | Affidavit of Bret Lopeman in Support of Memorandum in Support of Motion to Quash or in the Alternative, to Modify and Condition Compliance With the Deposition Subpoena Duces Tecum to Ada County Custodian of Records |
| 01/14/2011 | Memorandum in Support of Motion to Quash or in the Alternative, to Modify and Condition Compliance With the Deposition Subpoena Duces Tecum to Ada County Custodian of Records |
| 01/14/2011 | Affidavit of Jana B. Gomez Esq. in Support of Memorandum in Support of Motion to Quash or in the Alternative, to Modify and Condition Compliance With the Deposition Subpoena Duces Tecum to Ada County Custodian of Records |
| 01/14/2011 | Affidavit of Ronald Surratt in Support of Memorandum in Support of Motion to Quash or in the Alternative, to Modify and Condition Compliance With the Deposition Subpoena Duces Tecum to Ada County Custodian of Records |
| 02/02/2011 | Motion for Nonsummary Contempt Proceeding |
| 02/02/2011 | Affidavit of Brian J. Holleran in Support of Motion for Nonsummary Contempt Proceeding |
| 02/02/2011 | Affidavit of Jason G. Dykstra in Support of Motion for Nonsummary Contempt Proceeding |
| 02/02/2011 | Affidavit of Ronald L. Osborne in Support of Motion for Nonsummary Contempt Proceeding |

| 02/02/2011 | Affidavit of Zach D. Heesch in Support of Motion for Nonsummary Contempt Proceeding |
| 02/02/2011 | Memorandum in Support of Motion for Nonsummary Contempt Proceeding |
| 02/02/2011 | Notice Of Hearing re Motion for Nonsummary Contempt Proceeding (02/22/11 @ 11 am) |
| 02/02/2011 | Hearing Scheduled (Motion 02/22/2011 11:00 AM) Motion for Nonsummary Contempt Proceeding |
| 02/04/2011 | Notice Of Hearing (02/22/11 @ 11:00 AM Motion to Quash) |
| 02/04/2011 | (2) Affidavit Of Service (02/03/11) |
| 02/08/2011 | Motion to Dismiss and Strike Motion for Nonsummary Contempt Proceeding |
| 02/08/2011 | Second Affidavit of Jana B Gomez Esq |
| 02/08/2011 | Second Affidavit of Doug Heikkila |
| 02/08/2011 | Memorandum in Support of Motion and Reply Memorandum in Support of Motion to Quash or Modify to Quash |
| 02/08/2011 | Notice Of Hearing Re Motion to Dismiss and Strike Motion 2.22.11@11AM |
| 02/09/2011 | Notice of Opposition to Ada County's Motion to Quash or in the Alernative to Modify & Condition Compliance with the Deposition Subpoena Duces Tecum to Ada County Custodian of Records |
| 02/15/2011 | Plaintiffs Motion to Amend Verified Complaint |
| 02/15/2011 | Affidavit of Jason G Dykstra |
| 02/15/2011 | Memorandum in Support of Plaintiffs Motion |
| 02/15/2011 | Notice Of Hearing (03/01/11 @ 4:00pm) |
| 02/15/2011 | Hearing Scheduled (Hearing Scheduled 03/01/2011 04:00 PM) Motion to Amend Verified Complaint |
| 02/22/2011 | Hearing result for Motion held on 02/22/2011 11:00 AM: District Court Hearing Held Court Reporter: V. Gosney Number of Transcript Pages for this hearing estimated: Motion for Nonsummary Contempt Proceeding - less than 100 |
| 02/22/2011 | Affidavit of Jason Scott |
| 02/22/2011 | Memorandum in Opposition to Plaintiffs Motion to Amend Verified Complaint |
| 02/22/2011 | Affidavit of Justin A Steiner in Opposition to Plaintiff's Motion to Amend Verified Complaint |
| 02/22/2011 | Memorandum in Opposition to Amend Verified Complaint |
| 02/25/2011 | Reply Brief in Support of Plaintiff's Motion to Amend Verified Complaint |
| 02/28/2011 | Memorandum |
| 03/01/2011 | Hearing result for Hearing Scheduled held on 03/01/2011 04:00 PM: District Court Hearing Held Court Reporter: V. Gosney Number of Transcript Pages for this hearing estimated: Motion to Amend Verified Complaint less than 100 |
| 03/01/2011 | Hearing Scheduled (Motion 03/03/2011 03:00 PM) for Cost of Production |
| 03/01/2011 | Supplemental Memorandum in Support of Motion to Modify and Condition COmpliance with the Deposition Subpoena |
| 03/01/2011 | Third Affidavit of Doug Heikkila |
| 03/01/2011 | Third Affidavit of Jana Gomez |
| | Memorandum in Opposition to Memorandum in |

03/02/2011  Support of Motion to Modify

03/03/2011  Hearing result for Motion held on 03/03/2011 03:00 PM: District Court Hearing Held Court Reporter: V. Gosney Number of Transcript Pages for this hearing estimated: for Cost of Production - less than 100

*Connection: Public*

# EXHIBIT 2

NO._____

A.M._____ FILED _____P.M.

APR 27 2010

J. DAVID NAVARRO, Clerk
By K. BOURNE
DEPUTY

Michael E. Baldner, ISB #5104
Jason G. Dykstra, ISB #6662
MEULEMAN MOLLERUP LLP
755 W. Front Street, Suite 200
Boise, Idaho 83702
(208) 342-6066 Telephone
(208) 336-9712 Facsimile
dykstra@lawidaho.com
I:\9543.00\APLI\VERIFIED COMPLAINT.DOC

Attorneys for Plaintiff Western Benefit Solutions, LLC

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

## OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| WESTERN BENEFIT SOLUTIONS , LLC, an Idaho limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> JOHN GUSTIN, an individual, and MORETON INSURANCE OF IDAHO, INC., an Idaho corporation d/b/a MORETON & COMPANY, <br><br> Defendants. | Case No. **CV OC 1008362** <br><br> **VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR PRELIMINARY INJUNCTION** <br><br> **Fee Category: A** <br> **Fee: $88.00** |

**COMES NOW,** Plaintiff Western Benefit Solutions, LLC, by and through its attorneys of

record, Meuleman Mollerup LLP, and for a cause of action against Defendants John Gustin and

Moreton Insurance of Idaho, Inc. d/b/a Moreton & Company, complains and alleges as follows:

**PARTIES**

1.    At all times material hereto, Plaintiff Western Benefit Solutions, LLC ("Plaintiff" or "WBS") was and is an Idaho limited liability company doing business in the State of Idaho.

2.    Defendant John Gustin ("Gustin") is a resident of the State of Idaho.

3.    Moreton Insurance of Idaho, Inc. ("Moreton") is an Idaho corporation doing business in the State of Idaho and utilizing the assumed business name, Moreton & Company, in the transaction of business.

**JURISDICTION AND VENUE**

4.    Jurisdiction is proper in this district, since the Court has subject matter jurisdiction over this action pursuant to Idaho Code § 1-705, and personal jurisdiction over the above-named Defendants pursuant to Idaho Code § 5-514.

5.    Venue is proper in Ada County pursuant to Idaho Code § 5-404 since one or more Defendants either reside or maintain their principal place of business in Idaho within this district. The amount in controversy in this lawsuit, exclusive of interest and costs, exceeds the jurisdictional minimum of this Court.

6.    This lawsuit arises from a commercial transaction, as such term is defined in Idaho Code § 12-120(3), between WBS and Gustin.

**GENERAL ALLEGATIONS**

7.    Based in Boise, Idaho, WBS provides employee benefits consulting, and brokerage services, which designs and implements employer-sponsored health insurance plans for large private businesses, public entities, and non-profit organizations.

8.      Gustin formerly worked as a Vice President, Sales for WBS until his termination effective April 6, 2010.

9.      Gustin is presently employed by Moreton, which also provides employee benefits consulting, brokerage services, and designs and implements employer-sponsored health insurance plans.

10.     This action arises out of the breach of an employment agreement (the "Agreement") between WBS and Gustin entered into on or about April 10, 2009. Attached hereto as **Exhibit A** and incorporated into this Verified Complaint, Application for Temporary Restraining Order, and Application for Preliminary Injunction (the "Verified Complaint") is a true and correct copy of the Agreement signed by Gustin.

11.     WBS offered Gustin continued employment as adequate and valuable consideration for Gustin entering into the Agreement.

12.     WBS did not negotiate or enter into the Agreement in bad faith.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT AGAINST GUSTIN)

13.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 12, inclusive, as though fully set forth herein.

14.     On or about April 10, 2009, Gustin entered into the Agreement (attached hereto as **Exhibit A**).

15.     WBS fully performed all obligations of it under the Agreement.

16.     Notwithstanding Gustin's termination, he remains bound by certain terms of the Agreement.

17.    Pursuant to Section 6 of the Agreement, Gustin agreed that he would not "directly or indirectly, disclose, furnish, publish, make accessible to others or make any use of . . . confidential information." Such confidential information includes, but is not limited to, "the names of customers, policy expiration dates, policy terms, conditions and rates, familiarity with the customer's risk characteristics, and information concerning the insurance markets for large or unusual commercial risks."

18.    Gustin has breached the Agreement by disclosing the names and confidential information regarding certain WBS clients related to their accounts and lines of coverage to Moreton.

19.    Pursuant to Section 8 of the Agreement, for a period of eighteen (18) months following his termination, Gustin cannot "directly or indirectly solicit, market or provide services for any customer or client that Key Employee [Gustin] established, developed, serviced, had a relationship, or nurtured during the term of his/her employment at WBS."

20.    Gustin has breached the Agreement by directly or indirectly soliciting, marketing and/or providing services to WBS clients on behalf of Moreton.

21.    Pursuant to Section 7 of the Agreement, upon his termination, Gustin was immediately required to deliver to WBS or its authorized representative all copies of materials furnished to him by WBS or used by him during his employment with WBS.

22.    Following his termination, Gustin breached the Agreement by failing to immediately deliver to WBS or its authorized representative, all copies of materials furnished to Gustin by WBS or used by Gustin during his employment with WBS.

23.    Gustin has further breached the Agreement by directly and/or indirectly soliciting at least one Key Employees of WBS, Tamie Cooper, to work for Moreton.

24.    As a direct and proximate result of the foregoing breaches of contract, WBS has been damaged in an amount to be proven at trial.

25.    Plaintiff has been required to retain the services of an attorney to bring this suit and is entitled to an award of reasonable attorneys' fees incurred in bringing this suit, pursuant to, *inter alia,* the Contract and Idaho Code §§ 12-120(1), 12-120(3), and 12-121, and Rule 54(e) of the Idaho Rules of Civil Procedure.

## SECOND CAUSE OF ACTION
### (INTENTIONAL INTERFERENCE WITH CONTRACT)

26.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 25, inclusive, as though fully set forth herein.

27.    Gustin disclosed the identity of certain WBS clients and confidential information related to their accounts to Moreton in order to assist or induce Moreton to acquire the accounts of Fast Enterprises, Inc., and potentially other clients.

28.    Based upon information and belief, Gustin and/or Moreton have intentionally interfered with these accounts, in an effort to cause Fast Enterprises, Inc., and potentially other clients, to breach their agreements with WBS.

29.    WBS has suffered or will suffer damages as a direct result of Gustin and/or Moreton's intentional interference with the accounts referenced hereinabove.

30.    Plaintiff has been required to retain the services of an attorney to bring this suit and is entitled to an award of reasonable attorneys' fees incurred in bringing this suit, pursuant to,

*inter alia,* the Contract and Idaho Code §§ 12-120(1), 12-120(3), and 12-121, and Rule 54(e) of the Idaho Rules of Civil Procedure.

## THIRD CAUSE OF ACTION
### (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

31.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 30, inclusive, as though fully set forth herein.

32.     WBS possessed a valid economic expectancy in its accounts with its clients, including Fast Enterprises, Inc. and potentially other clients.

33.     Gustin and/or Moreton have knowledge of WBS's expectancy.

34.     Based upon information and belief, Gustin and/or Moreton intentionally interfered with WBS's expectancy, inducing the termination of the expectancy.

35.     Gustin and/or Moreton interfered for an improper purpose or by improper means.

36.     WBS has suffered or will suffer damages as a direct result of Gustin and/or Moreton's disruption of its economic expectancy referenced hereinabove.

37.     Plaintiff has been required to retain the services of an attorney to bring this suit and is entitled to an award of reasonable attorneys' fees incurred in bringing this suit, pursuant to, *inter alia,* the Contract and Idaho Code §§ 12-120(1), 12-120(3), and 12-121, and Rule 54(e) of the Idaho Rules of Civil Procedure.

## FOURTH CAUSE OF ACTION
### (INJUNCTIVE RELIEF)

38.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 37, inclusive, as though fully set forth herein.

39.    For a period of eighteen (18) months following his termination, Gustin has a legally-recognized duty not to "directly or indirectly solicit, market or provide services for any customer or client that key employee [Gustin] established, developed, serviced, had a relationship, or nurtured during the term of his/her employment at WBS."

40.    Gustin further shall not "directly or indirectly disclose, furnish, publish, make accessible to others . . . confidential information." Such confidential information includes, but is not limited to, "the names of customers, policy expiration dates, policy terms, conditions and rates, familiarity with customer's risk characteristics, and information concerning the insurance markets for large or unusual commercial risks."

41.    Gustin also has a legal recognized duty to not directly or indirectly solicit any of WBS's key employees to work for any competitive company.

42.    If Gustin is allowed to continue breaching the Agreement by: (1) disclosing the identity of WBS clients and confidential information related to their lines of coverage to Moreton, (2) directly or indirectly soliciting, marketing to, or providing services for customers or clients that Gustin interacted with while an employee of WBS, (3) retaining materials furnished to Gustin by WBS or used by Gustin during his employment with WBS, and (4) directly or indirectly soliciting WBS's key employees to work for Moreton, then WBS will be irreparably harmed.

43.    WBS is likely to succeed on the merits of its claims.

44.    If the Court does not grant injunctive relief as requested, then Gustin and Moreton will be able to destroy or interfere with the good will and/or client relationships that WBS has invested substantial time and resources creating.

**VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR PRELIMINARY INJUNCTION - Page 7**

45.     Pursuant to the service of this Verified Complaint, WBS has provided notice to Gustin and Moreton of its request for injunctive relief.

46.     The injunctive relief requested, including a temporary restraining order, a preliminary injunction, and permanent injunction, will not unduly harm either Gustin or Moreton.

47.     On balance, the manifold prejudice to WBS far outweighs any potential prejudice to either Gustin or Moreton.

48.     No public policy issue predominates or will bar WBS's claims. Rather, this issue involves a private, personal, immediate, and irreparable injury to WBS due to wrongful conduct by Gustin and Moreton.

49.     Plaintiff has been required to retain the services of an attorney to bring this suit and is entitled to an award of reasonable attorneys' fees incurred in bringing this suit, pursuant to, *inter alia,* the Contract and Idaho Code §§ 12-120(1), 12-120(3), and 12-121, and Rule 54(e) of the Idaho Rules of Civil Procedure.

## ATTORNEYS' FEES AND COSTS

To bring this suit, Plaintiff has retained the services of Meuleman Mollerup LLP and is entitled to an award of attorneys' fees and costs pursuant to Idaho Code §§ 12-120(3) and 12-123, and Rule 54 of the Idaho Rules of Civil Procedure. In the event of default, Plaintiff claims attorneys' fees and costs in the amount of Five Thousand and no/100 Dollars ($5,000.00).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

I.     As to the First Cause of Action, the entry of Judgment in favor of the Plaintiff against Gustin as follows:

a)      For an amount to be proven at trial, but not less than Ten Thousand and no/100 Dollars ($10,000.00), together with interest thereon at the maximum rate allowed by law;

b)      For attorneys' fees and costs in the sum of not less than Five Thousand and no/100 Dollars ($5,000.00) if judgment is entered by default, and such further amounts as the Court may find reasonable if this matter is contested; and

c)      For such other and further relief as the Court deems just and proper.

II.      As to the Second and Third Causes of Action, the entry of Judgment in favor of the Plaintiff against Gustin and Moreton (collectively, "Defendants") as follows:

a)      For an amount to be proven at trial, but not less than Ten Thousand and no/100 Dollars ($10,000.00), together with interest thereon at the maximum rate allowed by law;

b)      For attorneys' fees and costs in the sum of not less than Five Thousand and no/100 Dollars ($5,000.00) if judgment is entered by default, and such further amounts as the Court may find reasonable if this matter is contested; and

c)      For such other and further relief as the Court deems just and proper.

III.      As to the Fourth Cause of Action, the entry of Judgment in favor of the Plaintiff against Gustin and Moreton as follows:

a)      For a temporary restraining order preserving the status quo and enjoining (1) Gustin from disclosing the identity of WBS clients and confidential information, including economic terms related to their lines of coverage, (2) Gustin and Moreton from directly or indirectly soliciting, marketing to, or providing services for customers or

clients that Gustin interacted with while an employee of WBS, (3) Gustin from retaining materials furnished to Gustin by WBS or used by Gustin during his employment with WBS, and (4) Gustin from directly or indirectly soliciting WBS's key employees to work for Moreton in violation of the Agreement;

b)    For a preliminary injunction that enjoins (1) Gustin from disclosing the identity of WBS clients and confidential information, including economic terms related to their lines of coverage, (2) Gustin and Moreton from directly or indirectly soliciting, marketing to, or providing services for customers or clients that Gustin interacted with while an employee of WBS, (3) Gustin from retaining materials furnished to Gustin by WBS or used by Gustin during his employment with WBS, and (4) Gustin from directly or indirectly soliciting WBS's key employees to work for Moreton in violation of the Agreement;

c)    For an injunction that enjoins (1) Gustin and Moreton from directly or indirectly soliciting, marketing to, or providing services for customers or clients that Gustin interacted with while an employee of WBS, and (2) Gustin from directly or indirectly soliciting WBS's key employees to work for Moreton in violation of the Agreement for a period of eighteen (18) months;

d)    For a permanent injunction that enjoins Gustin from (1) disclosing the identity of WBS clients and economic terms related to their lines of coverage, and (2) retaining materials furnished to Gustin by WBS or used by Gustin during his employment with WBS;

e)  For a judgment for compensatory damages in favor of WBS against Gustin and Moreton in an amount to be determined at trial;

f)  For an order relieving WBS of having to file a bond for the injunctive relief requested;

g)  For attorneys' fees and costs in the sum of not less than Five Thousand and no/100 Dollars ($5,000.00) if judgment is entered by default, and such further amounts as the Court may find reasonable if this matter is contested; and

h)  For such other and further relief as the Court deems just and proper.

DATED this 27th day of April 2010.

> MEULEMAN MOLLERUP LLP
>
> BY:
>
> Jason G. Dykstra
> Attorneys for Plaintiff

## VERIFICATION

STATE OF IDAHO    )
                ) ss.
COUNTY OF ADA    )

Ronald L. Osborne, being first duly sworn on oath deposes and states:

That he is a Manager of **Western Benefit Solutions, LLC,** Plaintiff in the above-entitled action, that he has read the foregoing document and knows the contents thereof, and that the statements therein made are true and correct to the best of his information, knowledge, and belief.

WESTERN BENEFIT SOLUTIONS, LLC

By: _____
           Ronald L. Osborne
Its:    Manager

SUBSCRIBED AND SWORN to before me this 27th day of April 2010.

_____
Notary Public in and for Idaho
My Commission Expires: Feb. 8, 2013

**VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR PRELIMINARY INJUNCTION - Page 12**

# EXHIBIT A

# AGREEMENT

Agreement dated 10 day of April , 2009 , between Western Benefit Solutions ("WBS"), and ___John Gustin___ ("Key Employee").

## INTRODUCTION

This Agreement is intended to set forth the terms and conditions of the employment relationship between WBS and its Key Employee. This relationship is based on the agreement and understanding of the parties that WBS is the owner of the business relating to WBS Customers as these terms are used below, and that these customers comprise a substantial part of the good will of WBS. To protect the business and good will of WBS, and the confidential information belonging to WBS, the parties have agreed to a limited period of noncompetition and to nondisclosure of confidential information following termination of employment. Such limitations relate solely to WBS Business and WBS Customers, and are intended to permit Key Employee to remain in the insurance and brokerage business, if he/she so desires.

## AGREEMENTS

WBS and Key Employee agree as follows:

1.  **Key Employee** – Employee acknowledges and agrees that he/she is a Key Employee by reason of the Employer's investment of time, money, trust, exposure to the public, exposure to technologies, intellectual property, business plans business processes and methods of operation, customers, vendors or other business relationships during the course of employment. Furthermore, Key Employee will gain a high-level of inside knowledge, influence, credibility notoriety as a representative or spokesman of the Employer, and as a result thereof, will have the ability to harm or threaten the Employer's legitimate business interest.

2.  **Employment; Compensation** – WBS agrees to employ Key Employee during the period of this Agreement and to pay Key Employee such compensation as is mutually agreed upon from time to time. Such compensation may only be changed by written agreement of the parties and shall be full compensation for services performed under this Agreement.

3.  **Performance by Key Employee** – Employee agrees to devote his/her entire business time and effort to the furtherance of the business of WBS and to perform faithfully to the best of his/her ability all assignments of work given to him/her by WBS.

4.  **WBS Business** – All business and fees relating to third party benefits, administration, consulting, life, health, long term care, brokerage and other services engaged in from time to time by WBS during the term of this Agreement (collectively, the "WBS Business"), produced or transacted through the efforts of Key Employee shall be the sole property of WBS and its subsidiaries. Key Employee shall have no right to share in a commission or fee resulting from the conduct of such business other than as compensation referred to in paragraph 2.

5.  **Premiums and Collections** – Premiums, commissions or fees on the WBS Business produced or transacted through the efforts of Key Employee shall be invoiced to the customer or account by WBS. All checks or bank drafts received by Key Employee from any customer or account shall be made payable to WBS; and all premiums, commissions or fees shall be collected by Key Employee in the name of and on behalf of WBS.

6.  **Confidential Information** – Key Employee acknowledges that in the course of his/her employment hereunder, he/she will become acquainted with confidential information belonging to WBS. This information relates to persons, firms, and corporations which are or will become customers or accounts of WBS during the term of this Agreement, and sources with which insurance is placed ("WBS Customers") and includes but not limited to, the names of customers, policy expiration dates, policy terms, conditions and rates, familiarity with customer's risk characteristics, and information concerning the insurance markets for large or unusual commercial risks. The confidential information also includes all information disclosed to Key Employee or known, learned, created or observed as a consequence of his/her employment not generally known in the relevant trade about WBS's business activities, products, processes and services, trade secrets, research and development programs, business plans, customer lists, potential customer lists, pricing, business strategies, financial information, marketing and sales. Key Employee agrees that at any time during or after his/her employment he/she will not, without the written consent of WBS, directly or indirectly, disclose, furnish, publish, make accessible to others or make any use of such confidential information except as may be required in the course of his/her employment hereunder.

7.  **Protection of WBS Property** – All records, files, manuals, customer lists, blanks, forms, materials, supplies, computer programs and other materials furnished to the Key Employee by WBS, used by Key Employee on their behalf, or generated or obtained by Key Employee during the course of employment, shall be and remain the property of WBS. Key Employee shall be deemed the bailee thereof for the use and benefit of WBS and shall safely keep and preserve such property, except as consumed in the normal business operations of WBS. Key Employee acknowledges that his/her property is confidential and is not readily accessible to WBS's competitors. Upon termination of employment hereunder, the Key Employee shall immediately deliver to WBS or its authorized representative all

such prope~~~, including all copies, remaining i~ ~e Key Employee's possession or control.

8.   **Nonsolicitation of Certain WBS Customers** -- Upon termination of employment hereunder, Key Employee agrees that for a period of eighteen (18) months following such termination, Key Employee will not directly or indirectly solicit, market or provide services for any customer or client that Key Employee established, developed, serviced, had a relationship with, or nurtured during the term of his/her Employment at WBS.

9.   **Organizing Competitive Businesses; Soliciting Company Key Employees** – Employee agrees that so long as he/she is working for WBS he/she will not undertake the planning or organizing of any business activity competitive with the work he/she performs at WBS. Key Employee agrees that he/she will not, for a period of eighteen (18) months following termination of employment with WBS, directly or indirectly, solicit any of WBS's Key Employees to work for Key Employee or any other competitive company.

10.  **Certain Commissions and Fees** – If any commission or fee becomes payable to Key Employee or to any person, firm or corporation by whom Key Employee is then employed as a result of a breach by Key Employee of the provisions of paragraphs 5, 6, 7, 8 or 9 of this Agreement, Key Employee agrees to pay, or to cause his/her new employer to pay, promptly to WBS an amount equal to such commission or fee.

11.  **Entire Agreement; Severability** – This Agreement sets forth the entire Agreement between the Key Employee and WBS, and supersedes any and all prior agreements and understandings, with respect of such employment. If any term of this Agreement is rendered invalid or unenforceable by judicial, legislative or administrative action, the remaining provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated. The Key Employee represents that he/she has not and will not enter into any agreement inconsistent herewith. The Key Employee agrees that any breach of this Agreement by him/her would not be susceptible to adequate relief by way of damages alone and that, in the event of such breach, WBS would be entitled to specific performance or injunctive or other equitable relief.

12.  **Termination** – This Agreement (other than paragraphs 6, 7, 8 and 9 hereof) may be terminated by either party upon fifteen (15) days prior written notice given to the other, or by other written agreement. Subject to the required fifteen (15) days notice, the employment of Key Employee is **AT-WILL** and there are no other agreements or understandings regarding Key Employee's employment.

13. **Binding Nature of Agreement** – This Agreement shall inure to the benefit and be binding upon and enforceable against the heirs and legal representatives and assigns of WBS. The Key Employee may not assign this Agreement.

IN WITNESS WHEREOF, the parties hereto executed this Agreement as of the date first above written.

**WESTERN BENEFIT SOLUTIONS**

By _____
                              Employer

_____
                **KEY EMPLOYEE NAME**

By _____
                          Key Employee

# EXHIBIT 3

NO._____ FILED _____
A.M._____ P.M. _____

APR 2 7 2010

J. DAVID NAVARRO, Clerk
By P. BOURNE
DEPUTY

Michael E. Baldner, ISB #5104
Jason G. Dykstra, ISB #6662
MEULEMAN MOLLERUP LLP
755 W. Front Street, Suite 200
Boise, Idaho 83702
(208) 342-6066 Telephone
(208) 336-9712 Facsimile
dykstra@lawidaho.com
I:\9543.007\PLD\SUMMONS (GUSTIN).DOC

Attorneys for Plaintiff Western Benefit Solutions, LLC

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

## OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| WESTERN BENEFIT SOLUTIONS , LLC, an Idaho limited liability company, | Case No. **CV OC 1008362** |
| Plaintiff, | **SUMMONS** |
| v. | **[John Gustin]** |
| JOHN GUSTIN, an individual, and MORETON INSURANCE OF IDAHO, INC., an Idaho corporation d/b/a MORETON & COMPANY, | |
| Defendants. | |

**NOTICE:   YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF(S).   THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.   READ THE INFORMATION BELOW.**

**TO:   Mr. John Gustin**
**Moreton & Company**
**12639 West Explorer Drive**
**Boise, ID 83713**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court within 20 days after service of this Summons on you.

**SUMMONS - Page 1**

If you fail to so respond the court may enter judgment against you as demanded by the plaintiff(s) in the Complaint.

A copy of the Complaint is served with this Summons. If you wish to seek the advice or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1.      The title and number of this case.

2.      If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3.      Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4.      Proof of mailing or delivery of a copy of your response to plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named Court.

DATED this _27_ day of April 2010 **DAVID NAVARRO**

CLERK OF THE DISTRICT COURT

By:    _____
       Deputy

NO._____
FILED _____ 408
A.M._____ P.M._____

APR 2 7 2010

J. DAVID NAVARRO, Clerk
By P. BOURNE
DEPUTY

TIMOTHY HANSEN

Michael E. Baldner, ISB #5104
Jason G. Dykstra, ISB #6662
MEULEMAN MOLLERUP LLP
755 W. Front Street, Suite 200
Boise, Idaho 83702
(208) 342-6066 Telephone
(208) 336-9712 Facsimile
dykstra@lawidaho.com
I:\9543.007\PLD\SUMMONS (MORETON).DOC

Attorneys for Plaintiff Western Benefit Solutions, LLC

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| WESTERN BENEFIT SOLUTIONS , LLC, an Idaho limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> JOHN GUSTIN, an individual, and MORETON INSURANCE OF IDAHO, INC., an Idaho corporation d/b/a MORETON & COMPANY, <br><br> Defendants. | Case No. CV OC 1008362 <br><br> **SUMMONS** <br><br> **[Moreton Insurance of Idaho, Inc.]** |

**NOTICE:** **YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF(S). THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO:** **Moreton Insurance of Idaho, Inc,**
      **c/o Allan M. Ranstrom, Registered Agent**
      **6223 N. Discovery Way, Suite 200**
      **Boise, ID 83713**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court within 20 days after service of this Summons on you.

**SUMMONS - Page 1**

If you fail to so respond the court may enter judgment against you as demanded by the plaintiff(s) in the Complaint.

A copy of the Complaint is served with this Summons. If you wish to seek the advice or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

    1.     The title and number of this case.

    2.     If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

    3.     Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

    4.     Proof of mailing or delivery of a copy of your response to plaintiff's attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named Court.

**DATED** this 27 day of April 2010.

J. DAVID NAVARRO

CLERK OF THE DISTRICT COURT

By: _____

        Deputy

SUMMONS - Page 2

# EXHIBIT 4

NO._____ FILED _____

A.M._____ P.M. _____

APR 2 9 2010

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT, DAVID NAVARRO, Clerk
THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA   DEPUTY

Western Benefit Solutions, LLC

Plaintiff(s):

**AFFIDAVIT OF SERVICE**

vs.

Defendant(s):

Case Number: CV OC 1008362

John Gustin et al.

For:
Meuleman Mollerup LLP
755 W. Front St., Ste. 200
Boise, ID 83702

STATE OF IDAHO        )
                      :ss
COUNTY OF ADA         )

Received by TRI-COUNTY PROCESS SERVING LLC on April 27, 2010 to be served on **JOHN GUSTIN**.

I, Antonio Roque, who being duly sworn, depose and say that on Wednesday, April 28, 2010, at 10:45 AM, I:

**SERVED** the within named person(s) by delivering to and leaving with **JOHN GUSTIN** a true copy of the **Summons, Verified Complaint, Application for Temporary Restraining Order, and Application for Preliminary Injunction** . Said service was effected at **Moreton & Company, 12639 W. Explorer Dr. Ste. 100, Boise, ID 83713**.

I hereby acknowledge that I am a Process Server in the county in which service was effected. I am over the age of Eighteen years and not a party to the action.

Our Reference Number: 94732
Client Reference: Michael E. Baldner

Subscribed and sworn before me today
Wednesday, April 28, 2010

**TRI-COUNTY PROCESS SERVING LLC**
P.O. Box 1224
Boise, ID, 83701
(208) 344-4132

Notary Public for the State of Idaho
Residing at Nampa, Idaho
My Commission Expires on March 7th, 2014

ORIGINAL

# EXHIBIT 5

Michael E. Baldner, ISB #5104
Jason G. Dykstra, ISB #6662
MEULEMAN MOLLERUP LLP
755 W. Front Street, Suite 200
Boise, Idaho 83702
(208) 342-6066 Telephone
(208) 336-9712 Facsimile
dykstra@lawidaho.com
I:\9543.007\PLD\NOH (PRELIMINARY INJUNCTION).DOC

Attorneys for Plaintiff Western Benefit Solutions, LLC

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| WESTERN BENEFIT SOLUTIONS , LLC, an Idaho limited liability company, | Case No. CV OC 1008362 |
| Plaintiff, | NOTICE OF HEARING ON APPLICATION FOR PRELIMINARY INJUNCTION |
| v. | |
| JOHN GUSTIN, an individual, and MORETON INSURANCE OF IDAHO, INC., an Idaho corporation d/b/a MORETON & COMPANY, | |
| Defendants. | |

**TO:   ALL PARTIES**

**NOTICE IS HEREBY GIVEN**, pursuant to Rule 65(a)(1) of the Idaho Rules of Civil

Procedure, that Plaintiff Western Benefit Solutions, LLC, by and through its counsel of record,

Meuleman Mollerup LLP, will call its *Application for Preliminary Injunction* for hearing before the

Honorable Judge Timothy Hansen on **May 17, 2010, at 2:30 p.m.** at the Ada County Courthouse in

Boise, Idaho.

**NOTICE OF HEARING ON APPLICATION FOR PRELIMINARY INJUNCTION - Page 1**

**DATED** this 29th day of April 2010.

MEULEMAN MOLLERUP LLP

BY: _____
Jason G. Dykstra
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of April 2010, a true and correct copy of the foregoing document was served by the method indicated below to the following parties:

| | |
|---|---|
| John Gustin<br>Moreton & Company<br>12639 West Explorer Drive, Ste. 100<br>Boise, ID 83713<br>*Defendant* | ☒ U.S. Mail<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ Facsimile: |
| Moreton Insurance of Idaho, Inc.<br>c/o Allan M. Ranstrom, Registered Agent<br>Moreton & Company<br>12639 West Explorer Drive, Ste. 100<br>Boise, ID 83713<br>*Defendant* | ☒ U.S. Mail<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ Facsimile: |

_____
Jason G. Dykstra

**NOTICE OF HEARING ON APPLICATION FOR PRELIMINARY INJUNCTION - Page 2**

# EXHIBIT 6

NO. _____ FILED _____ PM 3:33
A.M. _____

MAY 0 3 2010

J. DAVID NAVARRO, Clerk
By KATHY J. BIEHL
DEPUTY

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF
## THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

Western Benefit Solutions, LLC

Plaintiff(s):

vs.

John Gustin et al.

Defendant(s):

**AFFIDAVIT OF SERVICE**

Case Number: CV OC 1008362

For:
Meuleman Mollerup LLP
755 W. Front St., Ste. 200
Boise, ID 83702

STATE OF IDAHO )
:ss
COUNTY OF ADA )

Received by TRI-COUNTY PROCESS SERVING LLC on April 27, 2010 to be served on **MORETON INSURANCE OF IDAHO, INC., D/B/A MORETON & COMPANY**.

I, Antonio Roque, who being duly sworn, depose and say that on Thursday, April 29, 2010, at 8:58 AM, I:

**SERVED** the within named **Moreton Insurance of Idaho, Inc., d/b/a Moreton & Company** by delivering a true copy of the **Summons, Verified Complaint, Application for Temporary Restraining Order, and Application for Preliminary Injunction** to Harvey Knoll, President, a person authorized to accept service on behalf of Moreton Insurance of Idaho, Inc., d/b/a Moreton & Company. Said service was effected at **12639 W. Explorer Dr., Ste. 200, Boise, ID 83713**.

I hereby acknowledge that I am a Process Server in the county in which service was effected. I am over the age of Eighteen years and not a party to the action.

Our Reference Number: 94733
Client Reference: Michael E. Baidner

Subscribed and sworn before me today
Thursday, April 29, 2010

**TRI-COUNTY PROCESS SERVING LLC**
P.O. Box 1224
Boise, ID, 83701
(208) 344-4132

Notary Public for the State of Idaho
Residing at Nampa, Idaho
My Commission Expires on March 7th, 2014

# EXHIBIT 7

NO. _____
A.M. _____ FILED _____
_____ P.M. _____

MAY 0 4 2010

J. DAVID NAVARRO, Clerk
By A. GARDEN
DEPUTY

PLEASE CONFORM AND RETURN

Brad P. Miller, ISB No. 3630
Jason D. Scott, ISB No. 5615
Hawley Troxell Ennis & Hawley LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: (208) 344-6000
Facsimile: (208) 954-5240
E-mail: bmiller@hawleytroxell.com
        jscott@hawleytroxell.com

Attorneys for Defendant Moreton Insurance of Idaho, Inc.

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

WESTERN BENEFIT SOLUTIONS, LLC, an )
Idaho limited liability company,        )
                                        )
               Plaintiff,               )
                                        )
vs.                                     )
                                        )
JOHN GUSTIN, an individual, and         )
MORETON INSURANCE OF IDAHO, INC., )
an Idaho corporation d/b/a/ MORETON &   )
COMPANY.                                )
                                        )
               Defendants.              )
_____)

Case No. CV OC 1008362

NOTICE OF APPEARANCE

Fee Category: I.1
Fee: $58.00

PLEASE TAKE NOTICE that Hawley Troxell Ennis & Hawley LLP, 877 Main Street,

Suite 1000, P.O. Box 1617, Boise, Idaho, 83701-1617 appears as counsel of record for

Defendant Moreton Insurance of Idaho, Inc. d/b/a Moreton & Company.

NOTICE OF APPEARANCE - 1

45136.0001.1901392.1

DATED THIS ___4th___ day of May, 2010.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By _Jason D. Scott_____
Jason D. Scott

Attorneys for Defendant Moreton Insurance of
Idaho, Inc.

45136.0001.1901392.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ４ day of May, 2010, I caused to be served a true copy of the foregoing NOTICE OF APPEARANCE by the method indicated below, and addressed to each of the following:

Michael E. Baldner
Jason G. Dykstra
MEULEMAN MOLLERUP LLP
775 W. Front Street, Suite 200
Boise, ID 83702

_____ U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ E-mail
  **X**  Telecopy

_____
Jason D. Scott

NOTICE OF APPEARANCE - 3

# EXHIBIT 8

NO _____
A.M._____ FILED _____
_____ P.M. _____

MAY 1 0 2010

J. DAVID NAVARRO, Clerk
By J. RANDALL
DEPUTY

Brad P. Miller, ISB No. 3630
Jason D. Scott, ISB No. 5615
Hawley Troxell Ennis & Hawley LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: (208) 344-6000
Facsimile: (208) 954-5240
E-mail: bmiller@hawleytroxell.com
        jscott@hawleytroxell.com

Attorneys for Defendant Moreton Insurance of Idaho, Inc.

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| WESTERN BENEFIT SOLUTIONS, LLC, an ) Idaho limited liability company, )<br><br>                    Plaintiff, )<br>vs. )<br><br>JOHN GUSTIN, an individual, and )<br>MORETON INSURANCE OF IDAHO, INC., )<br>an Idaho corporation d/b/a/ MORETON & )<br>COMPANY. )<br><br>                    Defendants. )<br>_____ ) | Case No. CV OC 1008362<br><br>DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION |

45136.0001.1906912.1

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................... 1

II. BACKGROUND ............................................................................................................... 1

III. ANALYSIS ...................................................................................................................... 5

    A.    WBS fails to demonstrate a "very clear" right to a preliminary
           injunction. ................................................................................................. 5

           1.    The Agreement's customer non-solicitation clause is too
                 broad to be enforced. ...................................................................... 5

           2.    WBS's breaches of the Agreement excused Gustin's
                 obligation to perform. ..................................................................... 8

           3.    Even if WBS had not lost the right to enforce the
                 Agreement, Gustin has not breached it and Moreton
                 Insurance has not committed the tort of interference. ........................ 9

    B.    A theoretical possibility that Gustin may breach the Agreement
           fails to establish irreparable injury................................................................ 12

    C.    A preliminary injunction must be conditioned on WBS posting a
           substantial bond. ........................................................................................ 13

IV. CONCLUSION............................................................................................................... 14

45136.0001.1906912.1

Pursuant to I.R.C.P. 7(b)(3), Defendant Moreton Insurance of Idaho, Inc. d/b/a Moreton & Company ("Moreton Insurance") submits this memorandum in opposition to the Application for Preliminary Injunction filed by Plaintiff Western Benefit Solutions, LLC ("WBS").

## I.

## INTRODUCTION

Defendant John Gustin ("Gustin"), an insurance agent, used to work for WBS. He believed WBS was treating him unfairly, so he decided to leave. Before leaving, he openly disclosed to WBS his intention to leave. WBS soon terminated Gustin, however, based on a false charge that he had gathered WBS confidential information to take with him.

After the termination, Gustin joined Moreton Insurance. Moreton Insurance is not aware of any reason to believe Gustin violated WBS's rights in making the transition. Gustin has not provided any WBS confidential information to Moreton Insurance. He has not solicited any WBS customers on behalf of Moreton Insurance. He has not solicited any WBS employees to join Moreton Insurance. WBS's claims to the contrary are unfounded. There are no grounds for entering a preliminary injunction against either Gustin or Moreton Insurance.

## II.

## BACKGROUND

WBS's business is selling employment-benefit lines of insurance coverage. (J. Gustin Aff. ¶ 18.) Gustin began working for WBS on January 28, 2002. (*Id.* ¶ 2.) At that time, WBS had two owners: Ron Osborne and Ron Kennedy. (*Id.* ¶ 3.) They recently parted ways, with Kennedy leaving WBS. (*Id.*) Kennedy's departure, coupled with Gustin's belief that WBS was treating him unfairly, made Gustin also decide to leave. (*Id.*) Before leaving, Gustin notified

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 1

Osborne in mid-March 2010 of his intentions. *(Id.* ¶ 4.) Gustin wanted to stay for a brief period after that because some of his accounts were due for renewal, and he wanted to personally ensure that the renewals were handled properly. *(Id.)*

Gustin assisted WBS, at Osborne's request, in attempting to transition Gustin's accounts to other producers at WBS. *(Id.)* Osborne instructed Gustin to prepare a list of the accounts that Gustin believed would leave WBS after Gustin left, even though Gustin was helping WBS try to transition them to other WBS producers. *(Id.* ¶ 5.) Gustin prepared a list (but did not keep a copy of it). *(Id.)* He and Osborne began discussing Gustin purchasing those accounts from WBS. *(Id.* ¶¶ 5-6.)

Before any purchase agreement was reached, WBS abruptly terminated its relationship with Gustin effectively immediately on April 6, 2010. *(Id.* ¶ 8.) By that time, Gustin already had returned to WBS any hard copies of WBS materials that he was able to locate at his home. *(Id.* ¶ 10.) Nevertheless, Osborne accused Gustin of e-mailing WBS proprietary materials from his WBS account to his home account. *(Id.)* The day before, Gustin indeed had sent e-mails from his WBS account to his home account, but they contained nothing proprietary to WBS. *(Id.* ¶ 7.) Instead, the e-mails contained Gustin's personal items, such as family photos, a church directory, a few jokes, and a spreadsheet of the expenses from his cabin. *(Id.* ¶ 7 & Exs. A-M.) Gustin sent the e-mails back to Osborne to clear his name *(id.* ¶ 9), but Osborne evidently chose not to reevaluate his baseless charges. Gustin kept no WBS proprietary materials. *(Id.* ¶ 10.)

The termination was wrongful and in violation of Gustin's rights under an Agreement dated April 10, 2009 ("Agreement") between himself and WBS. (Verif. Compl. Ex. A.) WBS had forced Gustin to sign the Agreement after he had been employed by WBS for several years,

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 2

using threats of termination and threats to withhold compensation that Gustin already had earned. (J. Gustin Aff. ¶ 19.) Under Section 12 of the Agreement, Gustin was entitled to 15 days' notice prior to termination, but WBS gave him none. (*Id.* ¶ 11.) WBS also is in violation of Section 2 of the Agreement at this time, as it has refused to pay Gustin bonuses and retirement benefits to which he is entitled under agreed compensation terms. (*Id.* ¶ 20.)

The day after being wrongfully terminated by WBS, Gustin began working for Moreton Insurance. (*Id.* ¶ 12.) Gustin has not disclosed any WBS proprietary information to Moreton Insurance, nor has he used any for Moreton Insurance's benefit. (*Id.* ¶ 15.) In addition, he has not directly or indirectly solicited, marketed, or provided services for any customer or client with which he had a relationship while at WBS. (*Id.* ¶ 16.)

One such client, however, did contact Gustin. That client is Fast Enterprises, LLC ("Fast"), whose employee Beth Schattin e-mailed Gustin on April 8, 2010, to express surprise that Gustin was no longer with WBS and to state her desire to continue Fast's relationship with Gustin. (*Id.* ¶ 17.) Gustin replied that he has a non-competition agreement (actually, he has a non-solicitation agreement) with WBS and intends to honor it. (*Id.*) Fast already had been doing business with another Moreton Insurance agent, Gustin's brother Cody, because WBS's offerings are not broad enough to meet all of Fast's insurance needs. (*Id.* ¶ 18; C. Gustin Aff. ¶ 2.) Fast elected to transition its former WBS business to Gustin's brother, without Gustin's involvement or assistance. (J. Gustin Aff. ¶18; C. Gustin Aff. ¶¶ 3-4.)

About two weeks after Gustin joined Moreton Insurance, a very recent WBS hire named Tamie Cooper also left WBS to join Moreton Insurance. (*Id.* ¶ 12.) Cooper's job is to support a producer; she is not a producer herself. (Cooper Aff. ¶ 1, 3.) Gustin had not even worked with

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 3

Cooper at WBS and did not solicit Cooper to leave WBS. (Cooper Aff. ¶¶ 3, 6; J. Gustin Aff. ¶ 14.) He had no involvement in her decision to leave WBS for Moreton Insurance. (*Id.* ¶¶ 5-6; J. Gustin Aff. ¶¶ 12-14.) After only one month with WBS, Cooper left because she simply did not like working there. (Cooper Aff. ¶¶ 2-3, 6.) She had sought a job with Moreton Insurance shortly before joining WBS. (*Id.* ¶ 2.) After realizing that joining WBS was a mistake, she decided to find out if Moreton Insurance was still hiring. (*Id.* ¶¶ 3-4.) Cooper chose Moreton Insurance's offer over another offer from Ameriben; had she not left WBS for Moreton Insurance, she would have left for Ameriben. (Cooper Aff. ¶ 6.)

WBS sued Gustin and Moreton Insurance on April 27, 2010. As its First Cause of Action, WBS claims that Gustin, in breach of the Agreement, (i) retained and/or disclosed to Moreton Insurance unspecified WBS proprietary information, (ii) solicited business from unspecified WBS customers (presumably, Fast) on behalf of Moreton Insurance, and (iii) solicited Cooper to work for Moreton Insurance. (Verif. Compl. ¶¶ 13-25.) As its Second and Third Causes of Action, WBS claims that Gustin and Moreton Insurance tortiously interfered with its contracts and customer relationship with Fast. (*Id.* ¶¶ 26-37.) Based on those claims, WBS asserts a Fourth Cause of Action, in which it seeks injunctive relief. (*Id.* ¶¶ 38-49.)

Worthy of note for present purposes, WBS seeks a preliminary injunction prohibiting "Gustin and Moreton from directly or indirectly soliciting, marketing to, or providing services for customers or clients that Gustin interacted with while an employee of WBS." (*Id.* at 10.) WBS fails, however, to demonstrate its entitlement to that relief.

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 4

**III.**

## ANALYSIS

Preliminary injunctions are not favored in Idaho. They can be granted "only in extreme cases where [1] the right is very clear and [2] it appears that irreparable injury will flow from its refusal." *Brady v. City of Homedale*, 130 Idaho 569, 572, 944 P.2d 704, 707 (1997) (citations omitted). As the plaintiff, WBS bears the burden of proving that those two requirements are satisfied. *See Harris v. Cassia County*, 106 Idaho 513, 518, 681 P.2d 988, 993 (1984).

**A.    WBS fails to demonstrate a "very clear" right to a preliminary injunction.**

To show a "very clear" right to a preliminary injunction, WBS must demonstrate a "substantial likelihood of success" on the merits. *Harris*, 106 Idaho at 518, 681 P.2d at 993. No such showing can be made, however, "where complex issues of law or fact exist which are not free from doubt." *Id.* WBS's evidence, which is limited to the contents of its verified complaint, fails to show the requisite "substantial likelihood of success." That is particularly so in light of the opposing evidence submitted by Gustin and Moreton Insurance, which creates grave doubts about WBS's claims.

    1.    The Agreement's customer non-solicitation clause is too broad to be enforced.

The Agreement provides as follows:

> Upon termination of employment hereunder, [Gustin] agrees that for a period of eighteen (18) months following such termination, [Gustin] will not directly or indirectly solicit, market or provide services for any customer or client that [Gustin] established, developed, serviced, had a relationship with, or nurtured during the term of his/her Employment at WBS.

(Verif. Compl. Ex. A § 8.) This clause is not enforceable because it is unreasonably broad in scope. Its scope is unreasonably broad in that Gustin purportedly is barred from doing business

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 5

of any kind with customers with which he had a relationship while at WBS, even if that business does not involve insurance products in competition with those offered by WBS. The clause therefore precludes business associations between Gustin and WBS customers that have nothing to do with WBS's legitimate business interests.

In that regard, it is important to note that Moreton Insurance offers full lines of insurance coverage. (J. Gustin Aff. ¶ 18.) By contrast, WBS only offers employment-benefit lines of coverage. (*Id.*) Moreton Insurance's product offerings are simply broader than WBS's. It is improper for WBS to attempt to preclude Gustin, and by extension Moreton Insurance, from having a business relationship of any kind with WBS customers following his termination. WBS's legitimate business interests do not extend so far. *See* Idaho Code § 44-2701 ("A key employee or key independent contractor may enter into a written agreement or covenant that . . . prohibits the key employee or key independent contractor from engaging in employment or a line of business that is in direct competition with the employer's business . . . ."); *see also* Idaho Code § 44-2704(4) ("It shall be a rebuttable presumption that an agreement or covenant is reasonable as to type of employment or line of business if it is limited to the type of employment or line of business conducted by the key employee or key independent contractor while working for the employer."). WBS's decision to force Gustin to sign such an overly broad restriction on his post-employment activities violates these Idaho statutes. It leaves WBS with an unenforceable customer non-solicitation provision in which it has no rights at all. That is the just consequence of its overreaching.

Indeed, the Idaho Supreme Court's approach to evaluating a non-solicitation clause is to "determine whether or not the clause is no more restrictive than necessary to protect the

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 6

employer's legitimate business interests." *Freiburger v. J-U-B Engineers, Inc.*, 141 Idaho 415, 420, 111 P.3d 100, 105 (2005). It is WBS's burden, as the employer, to prove the extent of its legitimate business interests. *See id.* This clause plainly is more restrictive than necessary to protect WBS's legitimate business interests; WBS has no legitimate need to preclude Gustin from doing business with WBS customers when that business is not in direct competition with WBS. *See id.* at 422, 111 P.3d at 107 ("[T]he Covenant at issue unreasonably prohibits Freiburger from providing any services to J-U-B's clients, current, past, or pending. We note that nothing in the Covenant limits the scope of activities Freiburger is prohibited from offering."); *see also Pinnacle Performance, Inc. v. Hessing*, 135 Idaho 364, 368-69, 17 P.3d 308, 312-13 (Ct. App. 2001). ("[T]he covenant not to compete prohibited Hessing from providing any service to Pinnacle's clients, current and past, after the termination of employment. Because the term 'services' is not expressly defined in the covenant not to compete, it fails to limit the scope of activities that Hessing is prohibited from offering, selling, or trading. A covenant not to compete which prohibits an employee from working in any capacity or which fails to specify with particularity the activities that the employee is prohibited from performing is too overbroad and indefinite to be considered reasonable.").

Not only is the clause unenforceable as written, but also it cannot be judicially modified to render it narrower in scope and therefore enforceable. Such "blue-penciling" will not be done when adding words to a clause is necessary to make it enforceable. *Freiburger*, 141 Idaho at 423, 111 P.3d at 108. Here, words would have to be added to limit the scope of the clause so that it does not restrict Gustin's activities beyond what is necessary to protect WBS's legitimate business interests.

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 7

Because the clause is not enforceable as written, and cannot be judicially modified, it cannot be enforced at all.  At a minimum, whether the clause can be enforced against Gustin is "not free from doubt," making a preliminary injunction inappropriate.  *Harris*, 106 Idaho at 518, 681 P.2d at 993.

      2.    WBS's breaches of the Agreement excused Gustin's obligation to perform.

Based on a false charge that Gustin had misappropriated WBS proprietary information, WBS terminated Gustin effective immediately on April 6, 2010, in violation of Gustin's right under Section 12 of the Agreement to 15 days' notice prior to termination.  (J. Gustin Aff. ¶ 11; Verif Compl. Ex. A § 12.)  Further, WBS terminated Gustin without paying him bonuses and retirement benefits to which he is entitled under the terms of his employment, in breach of Section 2 of the Agreement.  (J. Gustin Aff. ¶ 11; Verif Compl. Ex. A § 2.)  WBS's application for a preliminary injunction is premised on alleged violations of the Agreement by Gustin.  But the violations committed by WBS preclude WBS from enforcing the Agreement against Gustin.

When one party materially breaches an agreement, the other party's performance is excused.  *E.g., J.P. Stravens Planning Assocs., Inc. v. City of Wallace*, 129 Idaho 542, 545, 928 P.2d 46, 49 (Ct. App. 1996).  "A substantial or material breach of contract is one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract."  *Id.* (quotation marks omitted).  Whether a breach is material is a question of fact.  *Id.* Gustin's right to receive all agreed employment compensation, as well as his right to prior notice of termination, undoubtedly were fundamental to his willingness to maintain the employment relationship.  WBS's violations of those rights therefore are material breaches of contract.

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 8

At a minimum, there is a question of fact as to whether WBS's breaches of the Agreement are material. That question of fact means that WBS's right to enforce the Agreement against Gustin is "not free from doubt." *Harris*, 106 Idaho at 518, 681 P.2d at 993. A preliminary injunction therefore is not available to WBS.

### 3. Even if WBS had not lost the right to enforce the Agreement, Gustin has not breached it and Moreton Insurance has not committed the tort of interference.

A preliminary injunction is only a remedy, not a cause of action. WBS calls its request for injunctive relief its "Fourth Cause of Action" (Verif. Compl. at 6), but in actuality it is no more than a request for a remedy in connection its substantive causes of action, which are for breach of contract and tortious interference. *See, e.g., Alabama v. United States Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance. There is no such thing as a suit for a traditional injunction in the abstract."). Thus, no preliminary injunction possibly could be entered against either Gustin or Moreton Insurance unless WBS shows a "substantial likelihood of success" on its claims for breach of contract and tortious interference.

Beginning with WBS's claim against Gustin for breach of the Agreement, WBS first claims that Gustin improperly disclosed WBS proprietary information to Moreton Insurance and/or retained it for himself. (Verif. Compl. ¶¶ 18, 22.) WBS fails, however, to identify any such information with specificity. Gustin in fact did not disclose any WBS proprietary information to Moreton Insurance. (J. Gustin Aff. ¶ 15.) While WBS terminated him for supposedly e-mailing WBS proprietary information to his home account, Gustin actually only e-mailed home some personal items, like pictures, jokes, and personal tax information. (*Id.* ¶ 7

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 9

& Exs. A-M.) Given the complete failure of proof, this particular breach allegation cannot support a preliminary injunction.

WBS next claims that Gustin breached the Agreement by soliciting WBS customers on behalf of Moreton Insurance. (Verif. Compl. ¶ 20.) That claim centers on Fast, which already was doing business with Moreton Insurance before Gustin left WBS, but which thereafter moved its employee-benefits insurance business from WBS to Moreton Insurance. As noted above, the Agreement's customer non-solicitation clause is unenforceable, so WBS's claim that Gustin violated it is irrelevant. Regardless, WBS offers no evidence to support its conclusion that Gustin solicited Fast to move its business to Moreton Insurance, or that Gustin is servicing Fast on behalf of Moreton Insurance. In fact, Gustin's brother Cody, who had the preexisting relationship with Fast, obtained Fast's employee-benefits insurance business without Gustin's help. (J. Gustin Aff. ¶ 18; C. Gustin Aff. ¶¶ 1-3.) Gustin merely responded to a Fast inquiry by noting his inability to help because of contractual obligations to WBS. (J. Gustin Aff. ¶ 17.) Again, the evidence does not support a breach of the Agreement.

Finally, WBS claims that Gustin breached the Agreement by soliciting Cooper to leave WBS for Moreton Insurance. (Verif. Compl. ¶ 23.) That claim suffers at least three fatal flaws. First, Gustin did not actually solicit Cooper to leave WBS; she left of her own accord, without Gustin's involvement. (J. Gustin Aff. ¶¶ 12-14; Cooper Aff. ¶¶ 1-6.) Second, Cooper would have left WBS for Ameriben, from which she also had a job offer, had she not left for Moreton Insurance. (Cooper Aff. ¶ 6.) Third, the Agreement bars Gustin from soliciting "WBS's Key Employees" (Verif. Compl. Ex. A § 9), but there is no evidence Cooper was a "Key Employee." The Agreement defines "Key Employee" as Gustin himself. (Verif. Compl. Ex. A at 1.) It

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 10

45136.0001.1906912.1

nowhere explains who all of WBS's other "Key Employees" are, and it gives no indication that non-producers like Cooper constitute WBS's "Key Employees." Moreover, there is no evidence that Cooper meets the statutory definition of "key employee," such that WBS could have bound her under Idaho law to a "key employee" agreement similar to the one Gustin signed. *See* Idaho Code § 44-2702(1), -2704(5). The Agreement cannot fairly be interpreted to require Gustin to refrain from soliciting Cooper, although he in fact did so refrain. Thus, WBS cannot prove any violation of the Agreement in regard to Cooper's transition to Moreton Insurance.

In sum, WBS fails to substantiate any claim that Gustin breached the Agreement. Its First Cause of Action therefore cannot serve as the foundation for a preliminary injunction.

The absence of proof the Agreement was breached also means that WBS's Second and Third Causes of Action will not support a preliminary injunction. Those claims accuse Gustin and Moreton Insurance of tortiously interfering with WBS's contracts and relationships with Fast. Moreton Insurance, of course, has every right to compete with WBS for the business of WBS's customers, including Fast. *E.g., Freiburger*, 141 Idaho at 420, 111 P.3d at 105 ("[A]n employer is not entitled to protection against ordinary competition."). Competition by Moreton Insurance is tortious only if it is "wrongful by some measure beyond the fact of the interference itself (*i.e.* that the defendant interfered for an improper purpose or improper means)." *Highland Enters., Inc. v. Barker*, 133 Idaho 330, 338, 986 P.2d 996, 1004 (1999). WBS does not allege any wrongful act by Moreton Insurance, beyond its alleged complicity in Gustin's alleged breaches of the Agreement. Because it cannot prove that any such breaches occurred, or that Moreton Insurance was complicit in them, it cannot show a "substantial likelihood of success" with regard to its tortious interference claims. No preliminary injunction is warranted.

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 11

**B.    A theoretical possibility that Gustin may breach the Agreement fails to establish irreparable injury.**

In addition to a substantial likelihood of success on the merits, WBS also must show that a preliminary injunction is needed to avoid irreparable injury. The mere theoretical possibility that WBS's rights under the Agreement might be violated is not enough to satisfy that requirement. Instead, there must be "a real danger that the act complained of actually will take place." 11A Charles A. Wright et al., *Federal Practice & Procedure* § 2942 (2d ed. 1995); *see also Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("[An] [i]njunction issues to prevent existing or presently threatened injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future.").

A preliminary injunction is not proper here because there is no concrete evidence that Gustin has breached, or threatens to breach, the Agreement, or that Moreton Insurance has done, or threatens to do, some act in violation of WBS's rights in its customer relationships. The mere fact that WBS may have rights under the Agreement, or rights in its customer relationships, is not enough to support an injunction. An actual or threatened breach of those rights is an essential prerequisite to an injunction, but is missing here.

Further, the scope of the injunction WBS seeks is broader than necessary. WBS seeks to enjoin "Gustin and Moreton from directly or indirectly soliciting, marketing to, or providing services for customers or clients that Gustin interacted with while an employee of WBS." (Verif. Compl. at 10.) Even if there were grounds for entering some sort of injunction, there clearly are no grounds for enjoining Moreton Insurance from (i) selling to WBS customers insurance products that are not in direct competition with those offered by WBS, and (ii) servicing WBS customers through producers other than Gustin.

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 12

**C.      A preliminary injunction must be conditioned on WBS posting a substantial bond.**

For the reasons explained above, WBS is not entitled to a preliminary injunction. None

should be entered. If the Court disagrees, however, WBS must be required to post a bond for

Moreton Insurance's protection in connection with receiving a preliminary injunction. The rules

contain a mandatory bond requirement: "No restraining order or preliminary injunction shall

issue except upon the giving of security by the applicant, in such sum as the court deems proper,

for the payment of such costs and damages including reasonable attorney's fees to be fixed by

the court, as may be incurred or suffered by any party who is found to have been wrongfully

enjoined or restrained." I.R.C.P. 65(c) (emphasis added). Thus, the bond amount must be large

enough to cover the damages Moreton Insurance would suffer if a preliminary injunction is

entered and later proves to have been wrongful.

WBS seeks to enjoin "Gustin and Moreton from directly or indirectly soliciting,

marketing to, or providing services for customers or clients that Gustin interacted with while an

employee of WBS." (Verif. Compl. at 10.) If, during the indeterminate period between now and

trial, Moreton Insurance were enjoined from doing business with all such WBS customers, it

would lose a substantial amount of business. One example is Fast, with which Moreton

Insurance already had a preexisting relationship, and to which it had sold insurance products

different in kind from those available through WBS. (Other examples are described in the

accompanying Affidavit of Cody Gustin.) The profits Moreton Insurance unjustly would lose if

the requested injunction is entered are damages against which the required bond must provide

protection.

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 13

Additionally, I.R.C.P. 65(c) allows the enjoined party to recover the costs and attorney fees incurred in dissolving a preliminary injunction at trial. *Devine v. Cluff*, 110 Idaho 1, 4 , 713 P.2d 437, 440 (Ct. App. 1985); *see also Durrant v. Christensen*, 117 Idaho 70, 73, 785 P.2d 634, 637 (1990). Accordingly, the bond amount should be designed not only to cover potential lost profits, but also the costs and attorney fees Moreton Insurance will incur in attempting to undo the preliminary injunction at trial.

On that basis, Moreton Insurance requests a bond of at least $100,000.

IV.

CONCLUSION

WBS's application for a preliminary injunction must be denied. WBS cannot establish that Gustin breached the Agreement. Because proof of such a breach is essential to WBS's claims that Moreton Insurance committed tortious interference, its absence necessarily means that WBS has failed to prove tortious interference. Because there is no proof of tortious interference, WBS fails to show a likelihood of success on the merits against Moreton Insurance. It is not entitled to a preliminary injunction.

DATED THIS **10**th day of May, 2010.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By _____
Jason D. Scott

Attorneys for Defendant Moreton Insurance of Idaho, Inc.

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **10**ᵗʰ day of May, 2010, I caused to be served a true copy of the foregoing DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION by the method indicated below, and addressed to each of the following:

| Michael E. Baldner | _____ U.S. Mail, Postage Prepaid |
| Jason G. Dykstra | __X__ Hand Delivered |
| MEULEMAN MOLLERUP LLP | _____ Overnight Mail |
| 775 W. Front Street, Suite 200 | _____ E-mail |
| Boise, ID 83702 | _____ Telecopy |

| Robert B. White | _____ U.S. Mail, Postage Prepaid |
| GIVENS PURSLEY LLP | __X__ Hand Delivered |
| 601 W. Bannock Street | _____ Overnight Mail |
| P.O. Box 2720 | _____ E-mail |
| Boise, ID 83701-2720 | _____ Telecopy |

_____
Jason D. Scott

DEFENDANT MORETON INSURANCE OF IDAHO, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION - 15

# EXHIBIT 9

05/10/2010  14:16  FAX  2083210101                                        ☑001/003

NO._____
A.M_____  ̄FILED ̄_____
_____P.M_____

MAY 1 0 2010

J. DAVID NAVARRO, Clerk
By J. RANDALL
DEPUTY

Brad P. Miller, ISB No. 3630
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5240
Email: bmiller@hawleytroxell.com

Attorneys for Defendant MORETON INSURANCE
OF IDAHO, INC., d/b/a MORETON &
COMPANY

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| WESTERN BENEFIT SOLUTIONS, LLC, an ) Idaho limited liability company,, | Case No. CV OC 1008362 |
|---|---|
| ) Plaintiff, ) | AFFIDAVIT OF TAMIE COOPER |
| ) vs. ) | |
| ) JOHN GUSTIN, an individual, and ) MORETON INSURANCE OF IDAHO, INC., ) an Idaho corporation, d/b/a MORETON & ) COMPANY, ) | |
| ) Defendants. ) | |

I, Tamie Cooper, being first duly sworn under oath, deposes and says:

1.     I am currently employed by Moreton Insurance of Idaho, Inc. ("Moreton") as an

account manager and was formally employed by Western Benefit Solutions, LLC ("WBS") as a

benefits specialist.  I provide administrative support to producers as an account manager and

AFFIDAVIT OF TAMIE COOPER - 1

45136.0001.1907328.1

provided similar administrative support as a benefits specialist. I make this Affidavit upon my own personal knowledge

    2.    In the late winter or early spring of this year I was looking for employment. I was actively interviewing with Ameriben and WBS. At the same time, I had also been contacted by Moreton concerning setting up an interview for an open position with that agency. Representatives of Moreton were not able to interview me for one week as they were going to be out of state. During that same week, I received and accepted a job offer from WBS. I commenced my employment with WBS on or about March 15, 2010. My last day of work with WBS was on or about April 15, 2010.

    3.    After accepting a position with WBS, I was dissatisfied. The producer with whom I was paired was not a good fit. I did not work for or with John Gustin at WBS. I approached Ron Osborne, the owner of WBS, told him I was dissatisfied and I did not think I was a good fit with the producer to whom I had been assigned. He asked if I would be willing to work for a new producer who had very few accounts. I knew that would mean that I would have very little work to do and would be dissatisfied. Accordingly, I commenced looking for other employment.

    4.    I made contact with Moreton to see if there was still a position available. I also re-interviewed with Ameriben. I received job offers from both Ameriben and Moreton.

    5.    I met again with Ron Osborne of WBS and told him I would be leaving to go to either Moreton or Ameriben. He told me that if I left to go to Moreton I had to tell him because he was placing restrictions on John Gustin. I told Ron Osborne that my leaving WBS had nothing whatsoever to do with John Gustin.

AFFIDAVIT OF TAMIE COOPER - 2

6.     John Gustin did not directly or indirectly solicit me to leave WBS or to join Moreton. I left WBS because I was dissatisfied with the position I had there. Had I not accepted the position with Moreton, I would have accepted the position offered by Ameriben.

Further your affiant sayeth naught.

*Tamie Cooper*
Tamie Cooper

STATE OF IDAHO        )
                      ) ss.
County of Ada         )

SUBSCRIBED AND SWORN before me this __10__ day of May, 2010.

*Tina Coleman*

Name: _TINA    COLEMAN_
Notary Public for Idaho
Residing at _Base, Id_
My commission expires _8/5/2011_

AFFIDAVIT OF TAMIE COOPER - 3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __10th__ day of May, 2010, I caused to be served a true copy of the foregoing AFFIDAVIT OF TAMIE COOPER by the method indicated below, and addressed to each of the following:

Michael E. Baldner                      _____ U.S. Mail, Postage Prepaid
Jason G. Dykstra                        ___✓__ Hand Delivered
MEULEMAN MOLLERUP LLP                   _____ Overnight Mail
755 W. Front St., Ste. 200             _____ E-mail: dykstra@lawidaho.com
Boise, ID 83702                         _____ Telecopy: (208) 336-9712
[Attorneys for Plaintiff]

Robert B. White                        _____ U.S. Mail, Postage Prepaid
GIVENS PURSLEY LLP                     ___✓__ Hand Delivered
601 W. Bannock Street                   _____ Overnight Mail
P.O. Box 2720                           _____ E-mail: rbw@givenspursley.com
Boise, ID 83701-2720                    _____ Telecopy: (208) 388-1300
[Attorneys for Defendant John Gustin]


                                        Brad P. Miller


AFFIDAVIT OF TAMIE COOPER - 4

# EXHIBIT 10

NO. _____
A.M. _____ FILED _____ P.M. _____

MAY 1 0 2010

J. DAVID NAVARRO, Clerk
By J. RANDALL
DEPUTY

Brad P. Miller, ISB No. 3630
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5240
Email: bmiller@hawleytroxell.com

Attorneys for Defendant MORETON INSURANCE
OF IDAHO, INC., d/b/a MORETON &
COMPANY

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| WESTERN BENEFIT SOLUTIONS, LLC, an )<br>Idaho limited liability company,, )<br> )<br>        Plaintiff, )<br> )<br>vs. )<br> )<br>JOHN GUSTIN, an individual, and )<br>MORETON INSURANCE OF IDAHO, INC., )<br>an Idaho corporation, d/b/a MORETON & )<br>COMPANY, )<br> )<br>        Defendants. )<br> ) | Case No. CV OC 1008362<br><br>AFFIDAVIT OF CODY GUSTIN |

I, Cody Gustin, being first duly sworn under oath, deposes and says:

1.    I am a producer at Moreton Insurance of Idaho, Inc. ("Moreton") and as such,

make this Affidavit upon my own personal knowledge.

2.    I recently became the agent of record for Fast Enterprises, LLC ("Fast") for lines

of business formerly handled by Western Benefit Solutions, LLC ("WBS"). I have known Beth

AFFIDAVIT OF CODY GUSTIN - 1

Schattin for years and have been friends with Beth's husband, Bob Schattin, since 1998. Beth Schattin is the decision maker for insurance at Fast. I have sold multiple lines of insurance, primarily long-term disability insurance to Fast for at least seven years.

3.     Beth Schattin came to our office for a presentation we were making to multiple clients concerning healthcare reform. She had been invited because she was the client representative for property and casualty liability insurance that we sold. At the meeting, I told Beth Schattin "hello." At that time she asked me what was going on with John, my brother. She informed me that their associate general meeting ("AGM"), where various vendors make benefit presentations was rapidly approaching and she was becoming concerned that she would not have anyone there to make the employee benefits presentation. She asked me if I would travel to Florida and make the AGM presentation. I told her to give it some more time, but that if she was in a lurch, I would do the presentation. I spoke with Beth Schattin on or about April 29, 2010. She informed me she had no one at WBS to make her AGM presentation. I told Beth in order to do the AGM presentation, I would need to be the agent of record. Beth Schattin appointed me the Agent of Record for Fast. I traveled to Fast's meeting in Florida and made the AGM presentation on May 10, 2010.

4.     Fast, transferring their account to me and making me the agent of record was done because of their urgent need for a representative to make the AGM presentation. My brother John Gustin did not furnish any proprietary information about Fast or WBS to me, nor did he directly or indirectly assist me in any manner in causing Fast's shift of its business from WBS to Moreton.

AFFIDAVIT OF CODY GUSTIN - 2

5.      I recently became agent of record for Tate's Rents. I have been acquainted with and friends with Jeff McGinnley at Tates Rents for years. He is a friend. He has a son who is the same age as my son. He will be an assistance coach on the little league football team that I coach. Jeff McGinnley spoke with me several times about many different topics including his informing me that he had left multiple messages with WBS, no one was telling him what was going on and that he could not get anyone to return his phone calls. He asked me if I could be his Agent of Record. I asked him to be patient for a couple of weeks. He called me a couple of weeks thereafter and asked me yet again to become their Agent of Record. I sent him the paperwork on Friday, April 30, 2010, to effect such a change. I received the paperwork back from Jeff McGinley on Monday, May 3, 2010.

6.      I did not receive any proprietary or confidential information from John Gustin concerning Tates Rents or WBS in connection with the transfer of Tates Rents' lines of business. John Gustin played no role in effecting the switch of Tates Rents from WBS to Moreton. To the best of my knowledge, John has not solicited, directly or indirectly, Tates to switch its business from WBS to Moreton.

7.      I recently became the agent of record for Syringa Property Management. I have been acquainted with Bill and Cheryl Kettler for a number of years. Cheryl Kettler is the HR contact and the individual responsible for selecting Syringa Property Management insurance. Their health insurance was set to renew on May 1, 2010. On Thursday, April 29, 2010, Cheryl sent an e-mail to Chris Christianson at Moreton. Christianson is the producer within Moreton who has handled and is handling several lines of business for Syringa Property Management. In her e-mail, Cheryl indicated that she had received no help from WBS. She indicated that she had

AFFIDAVIT OF CODY GUSTIN - 3

e-mailed and called and no one would respond to her inquiries. Chris Christianson forwarded the e-mail to me and said that he needed help to get a renewal done. I met with Cheryl Kettler on Thursday, April 29, 2010. I asked her what I could do to assist her. She asked me to renew their insurance. I told her in order to renew their insurance for them, I would either need to be an agent of record or obtain an authorization letter to work on their account. Approximately an hour later I received a letter indicating that they had made me their broker of record.

8.      John Gustin did not directly or indirectly solicit Syringa Property Management to switch its account to Moreton. He did not furnish WBS any proprietary or confidential information to me to facilitate the transfer of the account. John Gustin played no role in the transfer of the account. Rather, the account was transferred because no one at WBS would respond to Syringa Property Management's inquiries or provide them with assistance in renewing their insurance.

Further your affiant sayeth naught.

Cody Gustin

AFFIDAVIT OF CODY GUSTIN - 4

STATE OF FLORIDA     )
                     ) ss.
County of *COLLIER*  )

     SUBSCRIBED AND SWORN before me this *10th* day of May, 2010.

           A. LAWRENCE PURVIS
           MY COMMISSION EXPIRES
           EXPIRES: March 6      *A. LAWRENCE PURVIS*
           Bonded Thru Budget Notary Services
           Notary Public for Florida
           Residing at *MARCO ISLAND, FL 34145*
           My commission expires *MAR 6 2011*

AFFIDAVIT OF CODY GUSTIN - 5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __10th__ day of May, 2010, I caused to be served a true copy of the foregoing AFFIDAVIT OF CODY GUSTIN by the method indicated below, and addressed to each of the following:

Michael E. Baldner
Jason G. Dykstra
MEULEMAN MOLLERUP LLP
755 W. Front St., Ste. 200
Boise, ID 83702
[Attorneys for Plaintiff]

_____ U.S. Mail, Postage Prepaid
__✔__ Hand Delivered
_____ Overnight Mail
_____ E-mail: dykstra@lawidaho.com
_____ Telecopy: (208) 336-9712

Robert B. White
GIVENS PURSLEY LLP
601 W. Bannock Street
P.O. Box 2720
Boise, ID 83701-2720
[Attorneys for Defendant John Gustin]

_____ U.S. Mail, Postage Prepaid
__✔__ Hand Delivered
_____ Overnight Mail
_____ E-mail: rbw@givenspursley.com
_____ Telecopy: (208) 388-1300

_____
Brad P. Miller

AFFIDAVIT OF CODY GUSTIN - 6

# EXHIBIT 11

Robert B. White (ISB #4438)
Justin A. Steiner (ISB #8015)
GIVENS PURSLEY LLP
601 W. Bannock St.
P.O. Box 2720
Boise, ID 83701
Telephone:    (208) 388-1200
Facsimile:    (208) 388-1300

*Attorneys for Defendant John Gustin*

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE

STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| WESTERN BENEFIT SOLUTIONS, LLC, an Idaho limited liability company; <br><br> Plaintiff, <br><br> vs. <br><br> JOHN GUSTIN, an individual, and MORETON INSURANCE OF IDAHO, INC., an Idaho corporation d/b/a MORETON & COMPANY; <br><br> Defendants. | Case No. CV OC 1008362 <br><br> **NOTICE OF APPEARANCE** <br><br> **Filing Fee: $58.00** |

PLEASE TAKE NOTICE that Robert B. White, of the firm, Givens Pursley LLP, does hereby enter an appearance on behalf of John Gustin, a defendant in this action. All future pleadings, correspondence, and/or other documents relating to this matter should be forwarded to Robert B. White as attorney for said defendant at the address referenced above.

**NOTICE OF APPEARANCE - 1**
865699

DATED this 10th day of May, 2010.

GIVENS PURSLEY LLP

*R. Whit*

Robert B. White
Attorneys for Defendant John Gustin

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of May, 2010, I caused to be served a

true copy of the foregoing *Notice of Appearance* by the method indicated below and

addressed to each of the following:

Michael E. Baldner
Jason G. Dykstra
MEULEMAN MOLLERUP LLP
755 W. Front Street, Suite 200
Boise, ID 83702
*Attorneys for Plaintiff*

☐ U.S. Mail, Postage Prepaid
☒ Hand Delivered
☐ Overnight Mail
☐ Telecopy – 336-9712

BRAD MILLER
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main St., Ste. 1000
Boise, ID 83702
*Attorneys for Morton Insurance of Idaho*

☐ U.S. Mail, Postage Prepaid
☒ Hand Delivered
☐ Overnight Mail
☐ Telecopy – 954-5240

*R. White*

Robert B. White

**NOTICE OF APPEARANCE - 3**
865699

# EXHIBIT 12

Robert B. White (ISB #4438)
Justin A. Steiner (ISB #8015)
GIVENS PURSLEY LLP
601 W. Bannock St.
P.O. Box 2720
Boise, ID 83701
Telephone:    (208) 388-1200
Facsimile:    (208) 388-1300

*Attorneys for Defendant John Gustin*

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE

STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| WESTERN BENEFIT SOLUTIONS, LLC, an Idaho limited liability company;<br><br>Plaintiff,<br><br>vs.<br><br>JOHN GUSTIN, an individual, and MORETON INSURANCE OF IDAHO, INC., an Idaho corporation d/b/a MORETON & COMPANY;<br><br>Defendants. | Case No. CV OC 1008362<br><br>**DEFENDANT JOHN GUSTIN'S NOTICE OF JOINDER IN MORETON INSURANCE OF IDAHO, INC.'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION** |

PLEASE TAKE NOTICE that Defendant John Gustin joins in Defendant Moreton

Insurance of Idaho, Inc.'s Opposition to Plaintiff's Application for Preliminary Injunction,

filed May 10, 2010.

This joinder is supported by Moreton Insurance of Idaho, Inc.'s filings with the

Court and the Affidavit of John Gustin, filed contemporaneously herewith.

/ / /

**DEFENDANT JOHN GUSTIN'S NOTICE OF JOINDER IN MORETON INSURANCE OF IDAHO, INC.'S MOTION IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION - 1**
866143

DATED this 10th day of May, 2010.

GIVENS PURSLEY LLP

*R. White*

Robert B. White
Attorneys for Defendant John Gustin

DEFENDANT JOHN GUSTIN'S NOTICE OF JOINDER IN MORETON INSURANCE OF IDAHO,
INC.'S MOTION IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY
INJUNCTION - 2
866143

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of May, 2010, I caused to be served

a true copy of the foregoing *DEFENDANT JOHN GUSTIN'S NOTICE OF JOINDER IN*

*MORETON INSURANCE OF IDAHO, INC.'S OPPOSITION TO PLAINTIFF'S APPLICATION*

*FOR PRELIMINARY INJUNCTION* by the method indicated below and addressed to

each of the following:

Michael E. Baldner
Jason G. Dykstra
MEULEMAN MOLLERUP LLP
755 W. Front Street, Suite 200
Boise, ID 83702
*Attorneys for Plaintiff*

☐ U.S. Mail, Postage Prepaid
☒ Hand Delivered
☐ Overnight Mail
☐ Telecopy – 336-9712

BRAD MILLER
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main St., Ste. 1000
Boise, ID 83702
*Attorneys for Morton Insurance of Idaho*

☐ U.S. Mail, Postage Prepaid
☒ Hand Delivered
☐ Overnight Mail
☐ Telecopy – 954-5240

*R. Whit*

Robert B. White

DEFENDANT JOHN GUSTIN'S NOTICE OF JOINDER IN MORETON INSURANCE OF IDAHO,
INC.'S MOTION IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY
INJUNCTION - 3
866143